---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the <u>Southern District of Texas</u>

Case number (*if known*): _____ Chapter <u>11</u>

☐  Check if this is an amended filing

---

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy 04/25

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | American Fiber Comm L.L.C. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | N/A |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 43-1802389 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 1228    Euclid Avenue <br> Number    Street | Number      Street |
| Suite 250 | P.O. Box |
| Cleveland    Ohio    44115 <br> City      State      ZIP Code | City      State      ZIP Code |
| Cuyahoga <br> County | **Location of principal assets, if different from principal place of business** <br><br> Number      Street <br><br> City      State      ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | https://www.everstream.net/ |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other.  Specify: _____ |

| Debtor | American Fiber Comm L.L.C. | Case number (if known) 25-___ ( ) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax- exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

5171 - Wired and Wireless Telecommunications (except Satellite)

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check all that apply:*

　☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

　☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

　☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

　☐ A plan is being filed with this petition.

　☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

　☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

　☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes    District _____ When _____ Case number _____
                                        MM/ DD/ YYYY
          District _____ When _____ Case number _____
                                        MM / DD/ YYYY

| Debtor | American Fiber Comm L.L.C. | Case number (if known) | 25-        (        ) |
|---|---|---|---|
| | Name | | |

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes    Debtor _____See Schedule 1_____    Relationship _____See Schedule 1_____

District _____Southern District of Texas_____    When _____May 28, 2025_____
MM / DD / YYYY

Case number, if known _____

---

**11. Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes.  Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number          Street

_____
City                                State          ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact Name _____

Phone _____

---

**Statistical and administrative information**

---

**13. Debtor's estimation of available funds**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☒ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

(on a consolidated basis with all affiliated debtors)

| | | |
|---|---|---|
| ☐ 1-49 | ☒ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

Debtor  American Fiber Comm L.L.C.      Case number (if known) 25-___ ( )
        Name

| 15. Estimated assets<br>(on a consolidated basis with all affiliated debtors) | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☒ $500,000,001-$1 billion<br>☐ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |
|---|---|---|---|
| 16. Estimated liabilities<br>(on a consolidated basis with all affiliated debtors) | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☒ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |

| | Request for Relief, Declaration, and Signatures |
|---|---|

**WARNING** – Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- ▪ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.
- ▪ I have been authorized to file this petition on behalf of the debtor.
- ▪ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   May 28, 2025
              MM / DD/ YYYY

✗   /s/ Ken Fitzpatrick                          Ken Fitzpatrick
    Signature of authorized representative of     Printed name
    debtor

    Chief Executive Officer
    Title

**18. Signature of attorney**

✗   /s/ Gabriel A. Morgan            Date   May 28, 2025
    Signature of attorney for debtor          MM / DD / YYYY

    Gabriel A. Morgan                          Matthew S. Barr
    Printed Name

    Weil, Gotshal & Manges LLP                 Weil, Gotshal & Manges LLP
    Firm Name

    700 Louisiana Street, Suite 3700           767 Fifth Avenue
    Address

    Houston, Texas 77002                       New York, New York 10153
    City/State/Zip

    (713) 546-5000                             (212) 310-8000
    Contact Phone

    gabriel.morgan@weil.com                    matt.barr@weil.com
    Email Address

    24125891              Texas
    Bar Number            State

## Schedule 1

Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "**Court**").  A motion will be filed with the Court requesting the chapter 11 case of each entity listed below be consolidated for procedural purposes only and jointly administered under the case number assigned to the chapter 11 case of Everstream Solutions LLC.

| COMPANY |
|---|
| Everstream Networks LLC |
| Midwest Fiber Holdings LP |
| Midwest Fiber Acquisition Topco LLC |
| Midwest Fiber Acquisition Midco1 LLC |
| Midwest Fiber Acquisition LLC |
| Everstream Solutions LLC |
| Everstream GLC Holding Company LLC |
| American Fiber Comm L.L.C. |
| HRS Internet, LLC |
| 15955 State Street LLC |
| Rocket Fiber LLC |
| Lynx Network Group, Inc. |
| Lynx Fiber One, LLC |
| Lynx Fiber Two, LLC |

**OMNIBUS ACTION BY**
**WRITTEN CONSENT OF THE**
**RESTRUCTURING ADVISORY COMMITTEES OF EACH OF**
**MIDWEST FIBER HOLDINGS LP AND MIDWEST FIBER ACQUISITION LLC AND**
**THE APPLICABLE GOVERNING BODY OF EACH OF**
**THE OTHER EVERSTREAM ENTITIES**

**May 28, 2025**

**WHEREAS**, this omnibus written consent (this "**Consent**") is being executed and effective as of the date set forth above by: (i) the requisite members of the restructuring advisory committee of the board of managers of Midwest Fiber Holdings LP, a Delaware limited partnership ("**HoldCo**," and the restructuring advisory committee of the board of managers of HoldCo, the "**HoldCo Committee**"), (ii) the requisite members of the restructuring advisory committee of Midwest Fiber Acquisition LLC, a Delaware limited liability company ("**OpCo**," and the restructuring advisory committee of the board of managers of OpCo, the "**OpCo Committee**," and together with the HoldCo Committee, the "**Committees**"), (iii) the sole member of Midwest Fiber Acquisition Topco LLC, a Delaware limited liability company ("**HoldCo Borrower**"), (iv) the sole member of Midwest Fiber Acquisition Midco1 LLC, a Delaware limited liability company ("**OpCo Guarantor**"), (v) the sole member of Everstream Solutions LLC, an Ohio limited liability company ("**Everstream Solutions**"), (vi) the sole member of American Fiber Comm L.L.C., an Illinois limited liability company ("**American Fiber Comm**"), (vii) the sole member of HRS Internet, LLC, an Indiana limited liability company ("**HRS Internet**"), (viii) the sole member of Everstream GLC Holding Company LLC, a Delaware limited liability company ("**Everstream GLC**"), (ix) the members of the board of directors of Lynx Network Group, Inc., a Michigan corporation, ("**Lynx**"), (x) the sole member of Lynx Fiber One, LLC, a Michigan limited liability company ("**Lynx One**"), (xi) the sole member of Lynx Fiber Two, LLC, a Michigan limited liability company ("**Lynx Two**"), (xii) the sole member of 15955 State Street LLC, a Michigan limited liability company ("**15955 State Street**"), (xiii) the sole member of Rocket Fiber LLC, a Michigan limited liability company ("**Rocket Fiber**"), and (xiv) the sole member of Everstream Networks LLC, a Texas limited liability company ("**Everstream Networks**");

**WHEREAS**, for purposes of this Consent: (i) "**Governing Body**" means, (a) with respect to HoldCo, the HoldCo Committee, (b) with respect to OpCo, the OpCo Committee, (c) with respect to Lynx, the board of directors of Lynx, and (d) with respect to any other Company (as defined herein), its sole member (along with approval from the Committees); (ii) "**Companies**" means HoldCo, HoldCo Borrower, OpCo Guarantor, OpCo, Everstream Solutions, American Fiber Comm, HRS Internet, Everstream GLC, Lynx, Lynx One, Lynx Two, 15955 State Street, Rocket Fiber, and Everstream Networks; and (iii) terms defined in the singular shall have a comparable meaning when used in the plural and vice versa;

**WHEREAS**, on April 14, 2024, the board of managers of HoldCo (the "**HoldCo Board**") established a restructuring advisory committee of disinterested, independent managers with certain duties and authority and, on September 13, 2024, the HoldCo Board, acting by written consent (such consent, the "**HoldCo Committee Authorization Consent**"), expanded the mandate of the HoldCo Committee to include, among other things, reviewing, evaluating, discussing, considering,

and advising and consulting with HoldCo and its advisors regarding and, if the HoldCo Committee deems it to be in the best interest of HoldCo, approving (and causing the approval of) HoldCo's and/or certain of its direct and indirect subsidiaries' entry into any potential strategic alternatives and transactions related to the HoldCo's and its subsidiaries' outstanding liabilities, liquidity, assets, securities, claims, interests, short- and long-term business plans, and capital structure, including any loan arrangement, business combination, merger, acquisition, sale of equity interests or assets (including a transaction premised on a sale of equity interests or assets under section 363 of title 11 of the United States Code (the "**Bankruptcy Code**")), joint venture, financing, exchange, tender, potential amendment or exchange of indebtedness, reorganization, recapitalization, restructuring (including any restructuring pursuant to any plan of reorganization), liquidation, dissolution, winding up, commencement of any case, proceeding or process under any bankruptcy, insolvency, reorganization or other law affecting creditors' rights, or other transaction similar to any of the foregoing outside the ordinary course of business (each such strategic alternative or transaction, a "**Transaction**");

WHEREAS, on September 13, 2024, the board of managers of OpCo (the "**OpCo Board**"), acting by written consent (such consent, the "**OpCo Committee Authorization Consent**") established a restructuring advisory committee of disinterested, independent managers with certain duties and authority, which include, among other things, reviewing, evaluating, discussing, considering, and advising and consulting with OpCo and its advisors regarding and, if the OpCo Committee deems it to be in the best interest of OpCo, approving (and causing the approval of) OpCo's and/or certain of its direct and indirect subsidiaries' entry into any potential Transaction;

WHEREAS, on September 13, 2024, the sole shareholder of Lynx, acting by written consent (such consent, the "**Lynx Board Authorization Consent**" and together with the HoldCo Committee Authorization Consent and the OpCo Committee Authorization Consent, the "**Authorization Consents**"), appointed a board of independent directors to serve as the board of directors of Lynx (the "**Lynx Board**") and authorized, among other things, the Lynx Board to approve Lynx's and/or its direct subsidiaries' entry into a Transaction;

WHEREAS, pursuant to the Authorization Consents, as well as the applicable governing documents of the Companies, each Governing Body is authorized to (and following the approval by the Committees, directed to) approve each Company's entry into and consummation of a Transaction;

WHEREAS, each Governing Body has had the opportunity to consult with management and the legal and financial advisors (the "**Advisors**") of the Company for which it serves as governing body regarding the assets, liabilities, and liquidity of such Company, to fully consider, and has considered, the strategic alternatives available to such Company, and the impact of the foregoing on each Company's business, as applicable;

WHEREAS, the Governing Bodies, with the assistance of management and the Advisors of the Companies, have been involved in the review, evaluation, and negotiation with key stakeholders regarding various Transactions, including those contemplated under the DIP Financing Agreement (as defined herein) and the Additional DIP Financings Documents (as

defined herein);

**WHEREAS,** the Governing Bodies have had the opportunity to review, and have reviewed the form, terms, and provisions of the DIP Financing Agreement and the Additional DIP Financings Documents, and all the exhibits annexed thereto; and

**WHEREAS**, each Governing Body deems the following resolutions, including the commencement of the Chapter 11 Cases (as defined herein), and the performance by the Company for which it serves as governing body, of its obligations hereunder and the transactions contemplated thereby to be desirable, advisable and in the best interests of such Company and, therefore, desires to approve the following resolutions.

I.   <u>**Commencement of the Chapter 11 Cases**</u>

**NOW, THEREFORE, BE IT RESOLVED**, that each Governing Body has determined, after consultation with the management and the Advisors of the Company for which it serves as governing body, that it is desirable and in the best interests of such Company, its creditors, and other parties in interest that petitions be filed by such Company seeking relief under the chapter 11 of the Bankruptcy Code; and be it further

**RESOLVED**, that any officer, board or committee member, or other authorized person of each Company, or each such person's delegates (each, an "**Authorized Person**"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, with full power of delegation, and directed to negotiate, execute, deliver, and file, in the name and on behalf of such Company, and under its corporate seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, papers, affidavits, declarations, and other documents (the "**Chapter 11 Filings**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") (with such changes therein and additions thereto as any such Authorized Officer may deem necessary, advisable, desirable, or appropriate, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard); and be it further

**RESOLVED**, that, with respect to each Company, each of its Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to take and perform any and all further acts and deeds which such Authorized Person deems necessary, advisable, desirable, or appropriate in connection with the chapter 11 cases of such Company for which it is an Authorized Person (each, a "**Chapter 11 Case**" and collectively, the "**Chapter 11 Cases**") or Chapter 11 Filings, including, without limitation, (i) the payment of any consideration, (ii) the payment of fees, expenses, and taxes such Authorized Person deems necessary, advisable, desirable, or appropriate, and (iii) negotiating, executing, delivering, performing, and filing any and all documents, motions, pleadings, applications, declarations, affidavits, schedules, statements, lists, papers, agreements, certificates, and/or instruments (or any amendments or modifications thereto) in connection with the Chapter 11 Cases, with a view to the successful prosecution of the Chapter 11 Cases and engagement of professionals contemplated by the foregoing resolutions (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

## II.   <u>Retention of Advisors</u>

**RESOLVED**, that in connection with the Chapter 11 Cases, for each Company, its applicable Governing Body determines that, each Authorized Person of such Company, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals which such Authorized Person deems necessary, advisable, desirable, or appropriate in connection with, or in furtherance of, the Chapter 11 Cases, with a view to the successful prosecution of the Chapter 11 Cases (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

**RESOLVED**, that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153 and 700 Louisiana Street, Suite 3700, Houston, Texas 77002, is hereby retained as attorneys for the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the law firm of Richards, Layton & Finger, P.A., located at One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, is hereby retained as special counsel for the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that Bank Street Group LLC, located at 333 Ludlow St, South Tower–Third Floor, Stamford, Connecticut 06902, is hereby retained as M&A advisor for the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that PJT Partners LP, located at 280 Park Avenue, New York, New York 10017, is hereby retained as investment banker for the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Alvarez & Marsal North America, LLC, located at 540 West Madison Street, Suite 1800, Chicago, Illinois 60661, is hereby retained to provide financial advisory services to the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that Stretto, Inc., located at 410 Exchange, Suite 100, Irvine, California 92602, is hereby retained as claims, noticing, and solicitation agent for the Companies in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that, with respect to each Company, each of its Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to take and perform any and all further acts and deeds, including, without limitation, (i) the payment of any consideration, (ii) the payment of fees, expenses, and taxes such Authorized Person deems necessary, advisable, desirable, or appropriate, and (iii) negotiating, executing, delivering, and performing any and all documents, motions, pleadings, applications, declarations, affidavits, schedules, statements, lists, papers, agreements, certificates, and/or instruments (or any amendments or modifications thereto) in connection with the engagement of professionals

contemplated by the foregoing resolutions (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

### III.   Debtor-in-Possession Financing and Cash Collateral

**RESOLVED**, that in connection with the Chapter 11 Cases, the Governing Body of such Company determines that it is in the best interests of such Company for which they serve as governing body to approve entry into that certain secured super-priority priming debtor-in-possession financing transaction (such transaction, the "**DIP Financing**") as of or about the commencement of the Chapter 11 Cases, to be evidenced by that certain Super-Priority Term Loan Debtor-in-Possession Credit and Guaranty Agreement, dated as of or about the commencement of the Chapter 11 Cases (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**DIP Financing Agreement**"), including (a) the form, terms, and conditions of the DIP Financing Agreement, together with any amendments, modifications, alterations, or changes thereto as may be approved by any of such Company's Authorized Persons, (b) to the extent such Company is a party thereto, the execution, delivery, and performance of the DIP Financing Agreement and the Additional DIP Financing Documents (as defined herein), and the consummation of the transactions contemplated thereunder, including the borrowing (and repayment) of any loans or funds or any other extension of credit under the DIP Financing Agreement and any Additional DIP Financing Document, the guaranty of any obligations under the DIP Financing Agreement and any Additional DIP Financing Document, and the use of proceeds to provide liquidity for each Company throughout the Chapter 11 Cases, (c) the grant of security interests in all or any portion of such Company's assets to secure any obligations under the DIP Financing Agreement and any Additional DIP Financing Documents, (d) if applicable, the repayment, termination, or other treatment of existing third-party debt of the Companies and any other existing indebtedness pursuant to the terms of the DIP Financing Agreement and/or any Additional DIP Financing Document, and (e) the execution, delivery, and performance by such Company, to the extent such Company is a party thereto, of all agreements, security, guarantee or collateral documents, mortgages, financing statements, documents, promissory notes, instruments, notices, certificates, stock powers, payoff letters, fee letters, engagement letters, and all other related documents, including exhibits and schedules to or necessary, advisable, desirable, or appropriate (in the determination of any Authorized Person of such Company) to be executed and delivered by such Company in connection with the DIP Financing Agreement, in each case, in such form and substance as may be approved by any Authorized Person (each, an "**Additional DIP Financing Document**" and collectively, the " **Additional DIP Financing Documents**"), are hereby in all respects authorized and approved, and that each Authorized Person, any one of whom may act without the joinder of any of the others, be, and they hereby are, authorized, empowered, and directed to do and perform, or cause to be done and performed all such acts and things and to sign and deliver or cause to be signed and delivered, all such documents, agreements, certificates, and other instruments, and to take all such other actions as are necessary, advisable, desirable, or appropriate in order to effectuate the purpose and intent of the foregoing resolutions; and be it further

**RESOLVED**, that the granting by such Company of liens on and security interests in any or all of its assets to secure any obligations under the DIP Financing Agreement and any Additional DIP Financing Documents and the filing and recording of any UCC financing statements, fixture filings, intellectual property filings, or any other documents and the taking of any other actions

necessary, advisable, desirable, or appropriate to perfect such security interests, are hereby authorized and approved, and each Authorized Person is authorized on behalf of each applicable Company to execute and deliver any such other perfection documents or instruments, including, without limitation, continuation statements, and pay such fees, taxes, and expenses, as necessary; and be it further

**RESOLVED**, that the pledge by the Company of any equity interest held by it, the transfer of such equity interest to the administrative agent or collateral agent for the DIP Financing (the "**DIP Agent**") or any nominee thereof and any transfer from time to time by the DIP Agent or its nominee to any other person pursuant to the exercise of any rights under the DIP Financing Agreements and all steps required of such Company to give effect to such pledge and transfers, including the issuance of certificates of ownership and the entering of the names of any transferees onto the subsidiaries' equity holder registers, are hereby approved; and that each Authorized Person is hereby authorized, empowered, and directed on behalf of such Company, to execute and deliver any such other transfer documents or instruments; and be it further

**RESOLVED**, that, with respect to each Company, each of its Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to take and perform any and all further acts and deeds, including, without limitation, (i) the negotiation, execution, delivery, performance, and filing of any agreements, letters, certificates, or other instruments or documents, including the filing of UCC financing statements, fixture filings, intellectual property filings, or mortgage, (ii) any increase in the principal amount of any obligation, (iii) the modification, amendment, waiver, consent, or restatement to any of the DIP Financing Agreement and/or any Additional DIP Financing Document to the extent such Company is a party, (iv) the payment of any consideration, and (v) the payment of any consideration, and (vi) the payment of fees, expenses, and taxes as any such Authorized Person may deem necessary, advisable, desirable, or appropriate (such acts to be conclusive evidence that such Authorized Person, in his or her sole discretion, deemed the same to be necessary, advisable, desirable, or appropriate) in order to effect the transactions contemplated under the DIP Financing Agreement or any Additional DIP Financing Document to the extent such Company is a party, and all acts of any such Authorized Person taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects as the acts and deeds of such Company; and be it further

**RESOLVED**, that the execution, delivery, and performance of each of the documents described in the foregoing resolutions is necessary or convenient to the conduct, promotion, or attainment of the business and purposes of the Companies; and be it further

**RESOLVED**, that, to the extent applicable, the Authorized Persons may seek Bankruptcy Court approval for the use of the cash collateral of the lenders and administrative agent under that certain Credit and Guaranty Agreement, dated as of March 29, 2022 (as amended, restated, amended and restated, supplemented, modified, or otherwise in effect from time to time), by and among, among others, Midwest Fiber Acquisition LLC, as Borrower, Midwest Fiber Acquisition Midco1 LLC, as pledgor, certain subsidiaries of Midwest Fiber Acquisition LLC, as subsidiary guarantors, the lenders party thereto, and Société Générale, as administrative agent; and be it further

IV.    **General**

      **RESOLVED**, that, with respect to each Company, each of its Authorized Persons, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to take and perform any and all further acts or deeds, including, without limitation, (i) the payment of any consideration, (ii) the payment of fees, expenses, and taxes such Authorized Person deems necessary, advisable, desirable, or appropriate, (iii) the negotiation of such additional agreements, amendments, modifications, supplements, renewals, replacements, consolidations, substitutions, extensions, reports, documents, instruments, applications, notes, or certificates not now known but which may be required, and (iv) the execution, delivery, and filing (if applicable) of any of the foregoing, in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings, and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to be so necessary, advisable, desirable, or appropriate; and be it further

      **RESOLVED**, that, to the extent that any Company serves as the sole member, managing member, general partner, partner, or other governing body (collectively, a "**Controlling Company**"), in each case, of any other company (a "**Controlled Company**"), each Authorized Person of such Company, who may act without the joinder of any other Authorized Person, be, and hereby is, authorized, empowered, and directed in the name and on behalf of such Controlling Company (acting for such Controlled Company in the capacity set forth above, as applicable), to (i) authorize such Controlled Company to take any action that any Company is authorized to take hereunder and/or (ii) take any action on behalf of such Controlled Company that an Authorized Person is herein authorized to take on behalf of such Controlling Company; and be it further

      **RESOLVED**, that this Consent may be executed in any number of counterparts and in separate counterparts, each of which when executed shall be deemed to be an original and all of which taken together shall constitute one and the same resolutions; and be it further

      **RESOLVED**, that a reproduction of this Consent may be executed by the undersigned, and an executed copy of this Consent may be delivered by the undersigned by electronic transmission device pursuant to which the signature of or on behalf of the undersigned can be seen, and such execution and delivery shall be considered valid, binding and effective for all purposes; and be it further

      **RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director, or any member of such Company, in the name and on behalf of such Company, or for the benefit of, the Companies or in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Restructuring Advisory Committee of Midwest Fiber Holdings LP, have executed this Consent as of the date first written above.

By: _Michael Robinson_

Name:  Michael Robinson

By: _____

Name:  Melker Sandberg

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Restructuring Advisory Committee of Midwest Fiber Holdings LP, have executed this Consent as of the date first written above.

By: _____

Name:  Michael Robinson

By: _____

Name:  Melker Sandberg

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Restructuring Advisory Committee of Midwest Fiber Acquisition LLC, have executed this Consent as of the date first written above.

By: Michael Robinson
_____

Name: Michael Robinson

By: _____

Name: Melker Sandberg

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE RESTRUCTURING ADVISORY COMMITTEE OF MIDWEST FIBER ACQUISITION LLC AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Restructuring Advisory Committee of Midwest Fiber Acquisition LLC, have executed this Consent as of the date first written above.

By: _____

    Name: Michael Robinson

By: _____

    Name: Melker Sandberg

Docusign Envelope ID: C4ECB29A-D822-43DE-863F-D5E2D0848B60

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Board of Lynx Network Group, Inc., have executed this Consent as of the date first written above.

By: _Michael Robinson_

Signed by:
6AB0C09BA387415...

Name:  Michael Robinson

By: _____

Name:  Melker Sandberg

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF LYNX NETWORK GROUP, INC. AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the Board of Lynx Network Group, Inc., have executed this Consent as of the date first written above.

By: _____

Name:  Michael Robinson

By: _____

Name:  Melker Sandberg

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF LYNX NETWORK GROUP, INC. AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

**SOLE MEMBER OF MIDWEST FIBER
ACQUISITION TOPCO LLC:**

**Midwest Fiber Holdings LP**

By: _Ken Fitzpatrick_
B69D85BA3EC2484
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE SOLE MEMBER OF MIDWEST FIBER ACQUISITION TOPCO
LLC AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

<div style="margin-left: 40%">

**SOLE MEMBER OF MIDWEST FIBER ACQUISITION MIDCO1 LLC:**

**Midwest Fiber Acquisition Topco LLC**

By: _Ken Fitzpatrick_
DocuSigned by:
B69D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

</div>

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

**SOLE MEMBER OF EVERSTREAM
SOLUTIONS LLC:**

**Midwest Fiber Acquisition LLC**

By: _DocuSigned by:_ *Ken Fitzpatrick*
_____
        B69D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

SOLE MEMBER OF AMERICAN FIBER COMM L.L.C.:

**Everstream Solutions LLC**

By: _____
  *Ken Fitzpatrick*
  B69D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

<div style="margin-left: 40%;">

**SOLE MEMBER OF HRS INTERNET, LLC:**

**Everstream Solutions LLC**

By: _Ken Fitzpatrick_
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

</div>

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

SOLE MEMBER OF EVERSTREAM
NETWORKS LLC:

**Everstream Solutions LLC**

By: _Ken Fitzpatrick_
    B09D85BA3EC2484...

Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

**SOLE MEMBER OF EVERSTREAM GLC HOLDING COMPANY LLC:**

**Midwest Fiber Acquisition LLC**

By: _Ken Fitzpatrick_
  DocuSigned by:
  B09D85BA3EC2484...

Name: Ken Fitzpatrick
Title: Chief Executive Officer

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE SOLE MEMBER OF EVERSTREAM GLC HOLDING COMPANY LLC AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

<div style="margin-left:45%">

**SOLE MEMBER OF 15955 STATE STREET LLC:**

**Everstream GLC Holding Company LLC**

By: *Ken Fitzpatrick*
      B89D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

</div>

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

SOLE MEMBER OF ROCKET FIBER LLC:

**Everstream GLC Holding Company LLC**

By: *Ken Fitzpatrick*
Name: Ken Fitzpatrick
Title:   Chief Executive Officer

[SIGNATURE PAGE TO WRITTEN CONSENT OF THE SOLE MEMBER OF ROCKET FIBER LLC AUTHORIZING CHAPTER 11 COMMENCEMENT]

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

<div style="text-align:right">

**SOLE MEMBER OF LYNX FIBER ONE, LLC:**

**Lynx Network Group, Inc**

By: _Ken Fitzpatrick_
       B09D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

</div>

**IN WITNESS WHEREOF**, the undersigned has executed this Consent as of the date first written above.

**SOLE MEMBER OF LYNX FIBER TWO, LLC:**

**Lynx Network Group, Inc**

DocuSigned by:

*Ken Fitzpatrick*

By: _____
B69D85BA3EC2484...
Name:  Ken Fitzpatrick
Title:   Chief Executive Officer

| Fill in this information to identify the case: |
| --- |

Debtor name:  <u>American Fiber Comm L.L.C.</u>

United States Bankruptcy Court for the <u>Southern District of Texas</u>
                                                  (State)

Case number (*If known*):        25-_____  (  )

☐ Check if this is an
   amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders                                                   12/15

A list of consolidated creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes.  Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | GLW Broadband Attn:  Joel Large, GM 993 Commerce Drive Grafton, Ohio 44044 | Attn: Joel Large, GM Phone: (440) 926-3230 Email: jlarge@glwb.net | Trade Claim | Disputed | | | Undetermined |
| 2 | Ohio Edison Attn.: Hyun Park, CLO & SVP 341 White Pond Drive Akron, Ohio 44320 | Attn.: Hyun Park, CLO & SVP Phone: (800) 736-3402 Email: hpark@firstenergycorp.com | Trade Claim | Disputed | | | Undetermined |
| 3 | Crown Castle Attn.: Mike Kavanagh, COO 8020 Katy Freeway Houston, Texas 77024 | Attn: Mike Kavanagh, COO Phone: (713) 570-3000 Email: mike.kavanagh@crowncastle.com | Trade Claim | | | | $1,455,760.47 |
| 4 | Illuminating Co. Attn.: Hyun Park, CLO & SVP 431 White Pond Drive Akron, Ohio 44320 | Attn.: Hyun Park, CLO & SVP Phone: (800) 736-3402 Email: hpark@firstenergycorp.com | Trade Claim | | | | $1,006,628.60 |
| 5 | Northern Lights Locating & Inspection, Inc. Attn.: Caitlin Flater, COO 8109 Network Drive Plainfield, Indiana 46168 | Attn.: Caitlin Flater, COO Phone: (317) 839-0520 Email: cflater@nllocating.com | Trade Claim | | | | $881,330.25 |
| 6 | Juniper Networks, Inc. Attn.: Rami Rahim, CEO 1133 Innovation Way Sunnyvale, California 94089 | Attn.: Rami Rahim, CEO Phone: (408) 745-2000 Email: rrahim@juniper.net | Trade Claim | | | | $681,199.97 |
| 7 | Earthcom, Inc. Attn.: Peter Bertsch, President & CEO 3424 Corwin Road Williamston, Michigan 48895 | Attn.: Peter Bertsch, President & CEO Phone: (517) 482-1750 Email: peter.bertsch@earthcom.us | Trade Claim | | | | $589,071.10 |
| 8 | AT&T Attn.: Pascal Desroches, CFO 208 S. Akard Street Dallas, Texas 75202 | Attn.: Pascal Desroches, CFO Phone: (210) 821-4105 Email: pdesroches@att.com | Trade Claim | | | | $585,154.04 |

| Debtor | American Fiber Comm L.L.C. | Case number (if known) | 25-_____ ( ) |
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 Zayo Group, LLC<br>Attn.: Steve Smith, CEO<br>1805 29th Street, Suite 2050<br>Boulder, Colorado 80301 | Attn.: Steve Smith, CEO<br>Phone: (305) 485-3754<br>Email: steve.smith@zayo.com | Trade Claim | | | | $551,600.33 |
| 10 Synergi Partners<br>Attn.: James Brown, CEO<br>151 W. Evans Street<br>Florence, South Carolina 29501 | Attn.: James Brown, CEO<br>Phone: (843) 519-0808<br>Email: jbrown@synergipartners.com | Trade Claim | | | | $476,921.23 |
| 11 Motor City Electric Co.<br>Attn.: David Volkman Jr., President<br>9440 Grinnell Avenue<br>Detroit, Michigan 48213 | Attn.: David Volkman Jr., President<br>Phone: (313) 921-5300<br>Email: dvolkman@mceco.com | Trade Claim | | | | $352,415.00 |
| 12 Ken Becker & Sons Inc.<br>Attn.: Kenneth Becker, CEO<br>7555 F and W Court<br>Lannon, Wisconsin 53046 | Attn.: Kenneth Becker, CEO<br>Phone: (262) 923-7782<br>Email: dean@kbsinc-wi.com | Trade Claim | | | | $340,817.63 |
| 13 Datasite LLC<br>Attn.: Rusty Wiley, CEO<br>733 S. Marquette Avenue, Suite 1325<br>Minneapolis, Minnesota 55402 | Attn.: Rusty Wiley, CEO<br>Phone: (651) 646-5332<br>Email: rusty.wiley@datasite.com | Trade Claim | | | | $288,858.83 |
| 14 Ekinops Corporation<br>Attn.: Didier Brédy, Chairman & CEO<br>9200 Corporate Boulevard, Suite 300<br>Rockville, Maryland 20850 | Attn.: Didier Brédy, Chairman & CEO<br>Phone: (240) 956-5065<br>Email: didier.bredy@ekinops.com | Trade Claim | | | | $287,112.75 |
| 15 CR Action Cable, Inc.<br>Attn.: Christopher Kirkpatrick, President<br>13203 Beeson Street NE<br>Alliance, Ohio 44601 | Attn.: Christopher Kirkpatrick, President<br>Phone: (330) 206-2329<br>Email: cractioncableinc@yahoo.com | Trade Claim | | | | $275,079.85 |
| 16 Allstate Sales Group, Inc.<br>Attn.: Anthony Tepedino, CEO<br>670 N. Beers Street, Building 3<br>Holmdel, New Jersey 07733 | Attn.: Anthony Tepedino, CEO<br>Phone: (732) 335-5588<br>Email: atepedino@asginc.us | Trade Claim | | | | $233,719.30 |
| 17 American Tower LLC<br>Attn.: Steve Vondran, President & CEO<br>116 Huntington Avenue, 11th Floor<br>Boston, Massachusetts 02116 | Attn.: Steve Vondran, President & CEO<br>Phone: (617) 375-7500<br>Email: steve.vondran@americantower.com | Trade Claim | | | | $232,581.51 |
| 18 Blue Jay Communications, Inc.<br>Attn.: John Houlihan, President<br>7500 Associate Avenue<br>Brooklyn, Ohio 44144 | Attn.: John Houlihan, President<br>Phone: (216) 661-2828<br>Email: jhoulihan@bluejaycommunications.com | Trade Claim | | | | $218,695.55 |
| 19 CSU, Inc.<br>Attn.: Lori Paul, VP<br>3919 Clarks Creek Road<br>Plainfield, Indiana 46168 | Attn.: Lori Paul, VP<br>Phone: (317) 972-0802<br>Email: lori@csucontracting.com | Trade Claim | | | | $216,694.88 |
| 20 Lumen Technologies, Inc.<br>Attn: Kate Johnson, CEO<br>100 CenturyLink Drive<br>Monroe, Louisiana 71203 | Attn: Kate Johnson, CEO<br>Phone: (903) 816-0891<br>Email: katejohnson@lumentechnologies.com | Trade Claim | | | | $212,485.01 |

| Debtor | American Fiber Comm L.L.C. | Case number (if known) | 25-_____ ( ) |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21   PirTano Construction Co., Inc.<br>Attn.:  Mike Piraino, President<br>1766 Armitage Court<br>Addison, Illinois 60101 | Attn.:  Mike Piraino, President<br>Phone: (630) 932-1810<br>Email:  mike.piraino@pirtano.com | Trade Claim | | | | $179,259.10 |
| 22   Uniti Fiber 2020 LLC<br>Attn.:  Padraig Donnelly, CFO<br>107 St. Francis Street, Suite 1800<br>Mobile, Alabama 36602 | Attn.:  Padraig Donnelly, CFO<br>Phone: (501) 850-0820<br>Email:<br>padraig.donnelly@unitigrouplimited.com | Trade Claim | | | | $174,829.35 |
| 23   SBA Properties, LLC<br>Attn.:  Marc Montagner, CFO<br>8051 Congress Avenue<br>Boca Raton, Florida 33487 | Attn.:  Marc Montagner, CFO<br>Phone: (781) 328-0291<br>Email: mmontagner@sbasite.com | Trade Claim | | | | $172,774.72 |
| 24   Frontier<br>Attn:  Veronica Bloodworth, EVP & CNO<br>1300 Columbus Sandusky Road N<br>Marion, Ohio 43302 | Attn:  Veronica Bloodworth, EVP & CNO<br>Phone: (203) 614-5600<br>Email: veronica.bloodworth@frontier.com | Trade Claim | | | | $161,239.29 |
| 25   Windstream Communications, LLC<br>Attn.:  Paul Sunu, CEO<br>50 Executive Parkway<br>Hudson, Ohio 44236 | Attn.:  Paul Sunu, CEO<br>Phone: (267) 207-2000<br>Email: paul.sunu@windstream.com | Trade Claim | | | | $150,923.65 |
| 26   TESCO Company, Inc.<br>Attn.:  John Pendleton, President<br>710 Executive Park Drive<br>Greenwood, Indiana 46143 | Attn.:  John Pendleton, President<br>Phone: (812) 343-4507<br>Email:  jeptesco@att.net | Trade Claim | | | | $146,188.15 |
| 27   eDGe Broadband Solutions, LLC<br>Attn.:  Ed Donnahoe, Managing Partner<br>244 Lea Plant Road<br>Waynesville, North Carolina 28786 | Attn.:  Ed Donnahoe, Managing Partner<br>Phone: (828) 785-1420<br>Email: ed@edge-bbs.com | Trade Claim | | | | $141,418.96 |
| 28   Creek Enterprise, Inc.<br>Attn.:  Jason Derby, President<br>638 W. Maumee Street<br>Adrian, Michigan 49221 | Attn.:  Jason Derby, President<br>Phone: (517) 424-6518<br>Email: jason@creekenterprise.com | Trade Claim | | | | $134,327.00 |
| 29   Southern Light, LLC, A Uniti Company<br>Attn.:  Padraig Donnelly, CFO<br>2101 Riverfront Drive, Suite A<br>Little Rock, Arkansas 72202 | Attn.:  Padraig Donnelly, CFO<br>Phone: (501) 850-0820<br>Email:<br>padraig.donnelly@unitigrouplimited.com | Trade Claim | | | | $125,422.18 |
| 30   Team Fishel<br>Attn.:  Heather Mills, CFO<br>1600 Walcutt Road<br>Columbus, Ohio 43228 | Attn.:  Heather Mills, CFO<br>Phone: (614) 274-8100<br>Email: hmmills@teamfishel.com | Trade Claim | | | | $122,193.91 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **AMERICAN FIBER COMM L.L.C.,** | § | Case No. 25-_____ ([●]) |
| | § | |
| Debtor. | § | |
| | § | |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT**
**PURSUANT TO FED. R. BANKR. P. 1007 AND 7007.1**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), attached hereto as **Exhibit A** is an organizational chart reflecting the ownership interests in Everstream Solutions LLC and each of its debtor affiliates (each, a "**Debtor**" and collectively, the "**Debtors**") as of the date hereof. The Debtors respectfully represent as follows:

1. Midwest Fiber Intermediate US LP and Midwest Fiber Management LP, each a non-Debtor, own approximately 99% and 1%, respectively, of the equity interests of Midwest Fiber Holdings LP.

2. Midwest Fiber Holdings LP directly owns 100% of the membership interests of Midwest Fiber Acquisition Topco LLC.

3. Midwest Fiber Acquisition Topco LLC directly owns 100% of the membership interests of Midwest Fiber Acquisition Midco1 LLC.

4. Midwest Fiber Acquisition Midco1 LLC directly owns 100% of the membership interests of Midwest Fiber Acquisition LLC.

5. Midwest Fiber Acquisition LLC directly owns 100% of the membership interests of:

   a. Everstream Solutions LLC; and

   b. Everstream GLC Holding Company LLC.

6. Everstream Solutions LLC directly owns 100% of the membership interests of:

   a. Everstream Networks LLC;

   b. American Fiber Comm L.L.C.; and

   c. HRS Internet, LLC.

7. Everstream GLC Holding Company LLC directly owns 100% of the equity interests of Lynx Network Group, Inc. and 100% of the membership interests of:

   a. 15955 State Street LLC; and

   b. Rocket Fiber LLC.

8. Lynx Network Group, Inc. directly owns 100% of the membership interests of:

   a. Lynx Fiber One, LLC; and

   b. Lynx Fiber Two, LLC.

**<u>Exhibit A</u>**

**Organizational Chart**



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **AMERICAN FIBER COMM L.L.C.,** | § | Case No. 25-_____ ([●]) |
| | § | |
| Debtor. | § | |
| | § | |

**LIST OF EQUITY HOLDERS**[1]

        Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the following identifies the equity security holders of the above-captioned debtor in possession (the "**Debtor**").

Check applicable box:

☐     There are no equity security holders or corporations that directly or indirectly own 10% or more of any class of the Debtor's equity interest.

☒     The following are the Debtor's equity security holders (list holders of each class, showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder):

| Name and Last Known Address or Place of Business of Holder | Kind/Class of Interest | Percentage of Interests Held |
|---|---|---|
| Everstream Solutions LLC<br>1228 Euclid Avenue, Suite 250<br>Cleveland, Ohio, 44115 | Membership Interests | 100% |

---

[1]    This list serves as the required disclosure by the Debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed are as of the date of commencement of the Debtor's chapter 11 case.

---

**Fill in this information to identify the case:**

Debtor name: __American Fiber Comm L.L.C.__

United States Bankruptcy Court for the __Southern District of Texas__
<div align="right">(State)</div>

Case number (*If known*): __25-_____ (   )__

---

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING – Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

---

### ▮ Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐ Schedule H: Codebtors (Official Form 206H)

☐ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐ Amended Schedule _____

☒ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☒ Other document that requires a declaration __Consolidated Corporate Ownership Statement and List of Equity Holders.__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __May 28, 2025__          **X** __/s/ Ken Fitzpatrick_____
<div>          MM /DD /YYYY                    Signature of individual signing on behalf of debtor</div>

__Ken Fitzpatrick_____
Printed name

__Chief Executive Officer_____
Position or relationship to debtor

---